IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CYNTHIA L. HOSSACK,<br><br>        Plaintiff,<br><br>vs.<br><br>CSG SYSTEMS, INC., a Delaware Corporation, authorized to do business in Nebraska;<br><br>        Defendant. | 8:13CV3178<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on its own motion instructing the parties to address whether this court has subject matter jurisdiction over this case, (Filing No. 35), and on Defendant's Motion to Strike, in part, Plaintiff's request for a jury trial, (Filing No. 16). Having reviewed the arguments of the parties, this court finds it has subject matter jurisdiction over the dispute. The court further finds that Defendant's Motion to Strike Plaintiff's jury demand should be denied.

BACKGROUND

Plaintiff initiated this law suit in the District Court of Douglas County, Nebraska on September 16, 2013. (Filing No. 1-1). Plaintiff has asserted causes of action based on promissory estoppel and fraudulent and negligent misrepresentation in connection with the termination of her employment by the defendant. Specifically, she alleges Defendant maintained an anti-harassment policy that protected individuals who reported workplace harassment from any form of retaliation. Plaintiff further alleges she was subject to discipline and her employment was eventually terminated after she complained of harassing and bullying behavior by one of her supervisors.

The complaint requests recovery of $33,270.00 to compensate Plaintiff for her losses and an undetermined additional amount for loses "which are accruing and will accrue in the future." (Filing No. 1-1 at CM/ECF p. 6). The complaint further prayed for costs of the action and attorney's fees. Id.

Defendant filed its Notice of Removal on October 16, 2013. (Filing No. 1). Defendant asserts jurisdiction is proper under 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states. The defendant argues the amount in controversy is met because Plaintiff's asserted damages continue to accrue and will exceed $75,000 by the time trial commences. Plaintiff did not contest the propriety of removing the case to federal court. Upon review of the pleadings, this court ordered the parties to address whether the threshold amount required for diversity jurisdiction is present in this case.

### ANALYSIS

Subject Matter Jurisdiction

A defendant may remove an action to federal court if the action could have been filed there originally. See 28 U.S.C. § 1441(a). "Diversity jurisdiction requires complete diversity, that is where no defendant holds citizenship in the same state where any plaintiff holds citizenship" and the amount in controversy exceeds $75,000. Cascades Development of Minnesota, LLC v. National Specialty Ins., 675 F.3d 1095, 1098 (8th Cir. 2012); see also 28 U.S.C. § 1332(a).

When damages are not fully specified in the complaint, the removing party bears the burden of establishing that the federal court has subject matter jurisdiction by a preponderance of the evidence, with all doubts as to jurisdiction resolved in favor of

remanding the case to state court. Knudson v. Systems Painters, Inc., 634 F.3d 968, 975 (8th Cir. 2011). The party asserting jurisdiction may support its argument with affidavits and other documents, and the trial court is free to weigh that evidence and resolve the factual issues to determine whether subject matter jurisdiction exists. Osborn v. United States, 918 F.2d 724, 729 (8th Cir.1990). "[T]he question is not whether damages are greater than the requisite amount, but whether a fact finder might legally conclude they are." Skoda v. Lilly USA LLC, 488 Fed.App. 161, 162 (8th Cir. 2012)(citing Kopp v. Kopp, 280 F.3d 883, 885 (8th Cir. 2002)).

The inquiry focuses on the claims at the time of removal. James Neff Kramper Family Farm P'ship v. IBP, Inc., 393 F.3d 828, 834 (8th Cir. 2005). Where a claim for back pay is involved, the calculation of potential damages associated with the award of back pay extends from the date of termination until the date of judgment.[1] Clark v. Matthew Int'l Corp., 639 F.3d 391, 396-97 (8th Cir. 2011); see also Lucas v. Ultima Framingham L.L.C., --- F. Supp. 2d ---, 2013 WL 5405668 (D. Mass. September 27, 2013); Fusco v. Victoria's Secret Stores, L.L.C., 806 F. Supp. 2d 1240, 1244 (M.D. Fla. 2011); Richard v. Time Warner Cable Media, Inc., 960 F. Supp. 2d 659, 661 (N.D. Texas 2013). For instance, in addressing whether the federal court had subject matter jurisdiction, the Clark court included the amount of back pay damages through the trial date in determining whether the amount in controversy requirement had been met. See Clark, 639 F.3d at 396-97.

Hossack's original complaint seeks damages in the amount of $33,270.00 to compensate her for her losses and an undetermined additional amount for loses "which

---

[1] Although not specifically mentioned, in cases addressing the relevant time period for the calculation of back pay, the Eighth Circuit has held fringe benefits are properly included in determining a plaintiff's back pay. Paxton v. Union National Bank, 688 F.2d 552, 574 (8th Cir. 1982). Projected fringe benefits should be included in the expected back pay calculations when determining whether the amount in controversy requirement has been met.

3

are accruing and will accrue in the future."[2] (Filing No. 1-1 at CM/ECF p. 6). Plaintiff also seeks her attorney fees.

The parties commenced discovery and Plaintiff provided an estimate of accrued damages from the time of her termination on February 6, 2013 up until December 16, 2013 – the date the discovery responses were served. As of December 16, 2013, Plaintiff estimated her lost wages at $13,001.86. There are approximately 46 weeks between December 16, 2013 and the anticipated date of trial on November 3, 2014. Plaintiff asserts that her wage loss accruing until the potential trial date is between $17,200 and $23,550, creating a total loss wage claim of $30,201.86 and $36,551.86. Based on the calculations provided by Plaintiff in discovery, she has averaged a wage loss of $506.07 per week since beginning her current job in June of 2013. Based on that estimate, Defendant asserts Plaintiff will incur a projected additional loss of $23,279.22 prior to trial (506.07 x 46 weeks from December 16, 2013 to November 3, 2014) for a total wage loss of $36,281.08.

The plaintiff also submitted calculations to address her lost benefits. One set of calculations attempts to demonstrate the value of the benefits she would have received if she had remained employed. Hossack claims she loses $480.77 each week. Based on that estimate, she accrued approximately $20,673.22 of damages as of December 16, 2013 and an additional $22,115.42 of projected lost benefits until the projected date of the trial, for a total of $42,788.64 in estimated lost benefits.

Defendant argues the amount in controversy has been met based on Plaintiff's calculations of lost wages and benefits from the time her employment was terminated

---

[2] Defendant asserts the amount of damages sought in the initial complaint total $38,270.00 in lost wages and an excess of $5,000 in lost benefits and expenses. However, the prayer in the initial complaint states Plaintiff is seeking damages in the amount of $33,270.00. Plaintiff later confirmed this amount in her brief addressing whether this court has subject matter jurisdiction. (Filing No. 39 at CM/ECF p. 4).

until the projected date of trial. Plaintiff does not openly contest jurisdiction, but suggests that rather than using her expectancy interest in the benefits she would have received had she remained employed by Defendant, her estimated out of pocket expenses provide a more appropriate calculation of her damages.[3] Based on those calculations, she submits that her damages will not exceed $75,000.

As Defendant notes, under Nebraska law a jury may award Plaintiff the expected lost wages and benefits to compensate her for Defendant's alleged fraudulent misrepresentation. See Eicher v. Mid Am. Fin. Inv. Corp., 270 Neb. 370, 386, 702 N.W.2d 792, 811 (2005). That is, expectancy or "benefit of the bargain" damages are available in Nebraska for claims of fraud. Id. Based upon the estimate of approximately $36,281.08 in lost wages and an estimated $42,788.64 in lost benefits from the date of termination until the projected trial in November, her potential damages exceed $75,000. Therefore, the requirements of 28 U.S.C. § 1332(a) have been met and this court has subject matter jurisdiction over the case.

Motion to Strike Jury Demand

After this case was removed from state court, Plaintiff filed a Demand for Jury Trial. (Filing No. 10). Defendant has moved to strike that demand, in part. (Filing No. 16). Fed. R. Civ. P. 38(a) provides that the "right of a jury trial as declared by the Seventh Amendment to the Constitution . . . is preserved to the parties inviolate." "When a jury trial has been demanded . . ., the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless: . . . the court, on motion . . . finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2).

---

[3] Plaintiff does not provide support for why she believes the calculation of her out of pocket expenses is a better measure of her alleged loss.

The Seventh Amendment provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . ." The phrase "at common law" has consistently been interpreted as "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41 (1989)(internal citations omitted).

"The constitutional right to a jury trial must be preserved when the litigation involves legal and equitable claims with common issues." Smith Flooring, Inc. v. Penn. Lumbermens Mut. Ins. Co., 713 F.3d 933, 937 (8th Cir. 2013)(citing Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472-73 (1962)). In such instances, "the normal practice is to try both claims to a jury. In this way, the jury's verdict will conclusively settle these common issues, and only issues peculiar to the equitable claim will be left to be decided by the judge." Brownlee v. Yellow Freight Sys., Inc., 921 F.2d 745, 749 (8th Cir. 1990).

Plaintiff has asserted three causes of action: 1) promissory estoppel; 2) fraudulent misrepresentation; and 3) negligent misrepresentation. Defendant has moved to strike Plaintiff's jury demand as to the cause of action based on promissory estoppel, claiming it is an equitable action under Nebraska law. (Filing No. 16). Defendant therefore argues Hossack has no right to a jury on that claim.

Defendant does not dispute that Plaintiff's claims seeking monetary damages for fraudulent and negligent misrepresentation are actions at law to which Hossack is entitled to a jury trial. Assuming, without deciding, the claim for promissory estoppel is equitable in nature[4], under Smith Flooring, the question the court must address is whether

---

[4] InCompass IT, Inc. v. XO Communications Services, Inc., 719 F.3d 891, 896 (8th Cir. 2013) notes claims for promissory estoppel may sound in law or equity based on the nature of

6

the legal and equitable claims share a common issue.[5]  Smith Flooring, 713 F.3d at 937-38.

Under Nebraska law, "[p]romissory estoppel may arise from the making of a promise, even without consideration, if it is intended that the promise should be relied upon and in fact was relied upon, and if refusal to enforce it would result in injustice." Gilbert Cent. Corp. v. Overland Nat. Bank, 232 Neb. 778, 785, 442 N.W.2d 372, 376-77 (1989). Likewise, claims for fraudulent and negligent misrepresentation necessitate a finding that a representation was made, relied upon, and that the party making the representation intended the recipient to rely upon it.  See Lucky 7, L.L.C. v. THT Realty, L.L.C., 278 Neb. 997, 1002, 775 N.W.2d 671, 675 (2009); Citizens Nat. Bank of Wisner v. Kennedy and Coe, 232 Neb. 477, 479, 441 N.W.2d 180, 181-82 (1989).

Undoubtedly, all three of Plaintiff's claims involve a common issue that should be resolved by the jury.  Each of the claims are dependent on a determination that a statement or promise was made, reliance on the statement or promise was intended, the plaintiff did rely on the promise, and she suffered damages due to her reliance.  The claims based on fraudulent and negligent misrepresentation will require an additional finding regarding the Defendants' state of mind, but those issues would go before the jury whether the promissory estoppel claim was present or not.  Accordingly, Defendant's motion to strike is denied.

---

the remedy sought.  Under Nebraska law, a successful promissory estoppel argument generally only entitles the successful party to reliance damages – an equitable remedy.  See Rosnick v. Dinsmore,  235 Neb. 738, 749, 457 N.W.2d 793, 800 (1990).

[5] Defendant relies heavily on InCompass IT, Inc. to support its request to have Plaintiff's demand for a jury stricken as to her claim for promissory estoppel.  However, InCompass involved only a single cause of action – one based on promissory estoppel – and did not address a Plaintiff's right to a jury when legal and equitable causes of action are mixed.

IT IS ORDERED:

1) The requirements of § 28 U.S.C. §§ 1332(a) and 1441(b) have been met, and this court has subject matter jurisdiction over Plaintiff's claims.

2) Defendant's Motion to Strike, ([Filing No. 16](Filing No. 16)) is denied.

Dated this 6th day of May, 2014.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.